UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARK ANTHONY JOHNSON,

        Petitioner,

v.

JEFFREY WOODS,

        Respondent.
_____/

Case No. 2:16-cv-16

Honorable Gordon J. Quist

# OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.      Factual allegations**

Petitioner Mark Anthony Johnson is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Following a jury trial in the Oakland County Circuit Court in Docket No. 314166, Petitioner was convicted of five counts of first-degree criminal sexual conduct (CSC I), one count of third-degree criminal sexual conduct (CSC III), and one count of assault with intent to commit criminal sexual conduct involving penetration. In Docket No. 314170, Petitioner was also convicted following a jury trial of possession with intent to deliver marijuana.

On December 21, 2012, the court sentenced Petitioner, as a fourth-offense habitual offender, to concurrent prison terms of 50 to 80 years for each CSC I conviction, 50 to 80 years for his CSC III conviction, 20 to 50 years for his assault conviction, and 22 months to 15 years for his possession with intent to deliver conviction. Petitioner appealed his convictions and the Michigan Court Appeals consolidated the appeals. The Michigan Court of Appeals affirmed Petitioner's convictions in an opinion dated April 22, 2014, which rejected Petitioner's insufficiency of the evidence arguments. (ECF No. 15-13, PageID.1051-1056.) The Michigan Supreme Court denied leave to appeal on October 28, 2014. (ECF No. 15-14, PageID.1218.) Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Petitioner did not file a collateral attack in the state courts.

Petitioner originally filed his habeas corpus petition on January 28, 2016, alleging that:

I.      The evidence was insufficient to convict Petitioner of first degree or third degree CSC because the testimony presented was based on a credibility contest with no other supporting evidence.

    II.       The evidence of possession with intent to deliver marijuana was insufficient because the prosecutor failed to prove the crime beyond a reasonable doubt.

    III.      The judge was biased at trial and at sentencing violating Petitioner's right to due process, a fair trial, and fair sentencing.

    IV.      Ineffective assistance of trial counsel.

(Pet., ECF No. 1, PageID.6-16.)

Respondent filed a motion to dismiss, asserting, in part, that Petitioner failed to exhaust two of his four claims. On January 6, 2017, the Court denied Respondent's motion to dismiss and ordered Petitioner to show cause why he was entitled to a stay of the proceedings in order to exhaust his unexhausted claims in state court. Petitioner complied and the Court granted Petitioner a stay so that he could exhaust his state court remedies with regard to his unexhausted claims.

On October 25, 2018, Petitioner filed his amended habeas corpus petition, raising the same four claims for relief that were raised in his original petition and asserting that he has exhausted his state court remedies as to all of the claims. (Am. Pet., ECF No. 26, PageID.1359-1363.) Petitioner also filed a brief in support, a copy of the trial court's opinion and order denying Petitioner's motion for relief from judgment, and a copy of the Michigan Supreme Court's order denying Petitioner's delayed application for leave to appeal. (ECF No. 26-1 and ECF No. 26-2.) Petitioner's application for leave to appeal the November 29, 2017, orders of the Michigan Court of Appeals was denied by the Michigan Supreme Court on July 27, 2018. (ECF No. 26-2, PageID.1412.)

    **II.**    **AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell*

3

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Sufficiency of the evidence of CSC

In Petitioner's first claim for habeas corpus relief, he asserts that his criminal sexual conduct convictions are not supported by legally sufficient evidence. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most

favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner raised this claim in his appeal of right. In addressing this issue, the Michigan Court of Appeals reviewed the evidence presented at trial:

> Five women testified that Johnson sexually assaulted them in separate incidents between October 2010 and April 2012. The women each identified Johnson as having a distinctive facial scar, and as driving a dark blue or grey Impala.
>
> The prosecutor admitted R.W.'s preliminary examination testimony into evidence because she died before trial. R.W. testified that she is a heroin addict. According to R.W., in October 2010, she left a party store and asked Johnson for a light for her cigarette. Johnson grabbed her around the neck, held a knife to her throat, and took her behind an abandoned house. According to R.W., Johnson penetrated her anally, stole money from her wallet, and told her not to call the police.
>
> R.W. testified that she did not call the police because she had an outstanding warrant, Johnson knew where she lived, and she did not think that anyone would believe her because she was a heroin addict. R.W. testified that she contacted the police after she learned that Johnson had been arrested.
>
> M.V. testified that she is a prostitute and alcoholic. According to M.V., Johnson approached her when she was leaving a liquor store at about 2:30 p.m. in December 2011. Johnson held a hunting knife to her side and forced her to walk to an

6

abandoned house. At the abandoned house, Johnson anally penetrated M.V. twice, threatened to kill her if she moved, and then left.

M.V. reported the assault to the police, who took her to a clinic where a rape kit was performed. Jennifer Jones, a forensic biologist, testified that Johnson's DNA profile matched the DNA profile of a donor on swab taken from M.V.'s rape kit.

K.J. testified that she is a prostitute and crack cocaine addict. K.J. testified that, in late 2011, Johnson picked her up with the understanding that he would pay her for sexual services. According to K.J., she and Johnson entered an abandoned apartment. K.J. told Johnson that she would not do anything until he paid her, and Johnson refused to pay. When K.J. attempted to leave, Johnson grabbed her by the throat, threatened to hurt her, penetrated her anally, and left. K.J. testified that she was bleeding and in pain, but did not seek medical attention or report the incident to the police because she did not believe that the police would take her seriously.

K.J. testified that, a few months later, she again got into Johnson's car. When she realized that Johnson was driving, she jumped out of the car while it was moving. Again, she did not report the incident to the police. K.J. testified that police approached her with a photographic lineup in April 2012, and she identified Johnson and gave a statement.

J.W. testified that she is a prostitute and a heroin and crack cocaine addict. J.W. testified that, in early 2012, Johnson picked her up and agreed to pay for sexual services. J.W. testified that Johnson drove her to an abandoned apartment complex. According to J.W., she told Johnson that he would have to pay her before she would perform. Johnson told her that he had a gun and would not pay her, and said that if she cooperated, she would not get hurt. J.W. testified that Johnson penetrated her anally. She did not report the incident to the police because she did not think that they would care.

J.W. testified that she got into Johnson's car a second time a few weeks later. According to J.W., Johnson was driving a different car. J.W. attempted to get out of the car, but Johnson sped up. Johnson took her to the same apartment complex. Johnson had a paper bag that J.W. believed contained a gun, and he choked her when she tried to escape. Johnson again anally penetrated J.W., and she did not report the incident because she was a prostitute. J.W. testified that she called the police after the third time that Johnson tried to pick her up because she did not believe that Johnson would leave her alone.

T.W. testified that at about 3:00 a.m. in March 2012, she argued with her boyfriend, got out of his car, and began walking home. T.W. testified that she was not a prostitute, and she had been drinking but was not drunk. According to T.W., Johnson approached her in a car and asked if she wanted a ride. Johnson drove T.W. to an abandoned apartment and told T.W. to get out of his car while he sold some heroin.

> According to T.W., she realized that she was in a bad situation and attempted to walk away. Johnson grabbed her neck and tried to force her into the apartment. T.W. testified that she managed to get away and fled to a well-lighted porch, where she called the police. T.W. identified Johnson in a photographic lineup.
>
> The jury found Johnson guilty of two counts of CSC I against M.V., one count of CSC I and one count of CSC III against J.W., one count of CSC I against K.J., one count of CSC I against R.W., and one count of assault with intent to commit sexual penetration against T.W.

(ECF No. 15-12, PageID.1052-1053.)

In addressing whether the evidence was sufficient to support Petitioner's convictions, the Michigan Court of Appeals noted:

> A complainant's testimony need not be corroborated in prosecutions involving criminal sexual conduct. The complainant's testimony alone may be sufficient to sustain a defendant's conviction. Here, the prosecution was not required to present physical evidence corroborating the complainants' testimonies. Johnson's argument that the prosecutor was required to provide physical evidence linking him to the crimes is without merit.
>
> Further, in his brief on appeal, Johnson recognizes that this case constituted a credibility contest. However, Johnson asserts that the complainants' testimonies were inconsistent and incredible. When reviewing the sufficiency of the evidence, this Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. Here, if the jury believed the complainants, their testimonies were sufficient to sustain Johnson's convictions. In order to convict Johnson, the jury must have chosen to believe the complainants. We defer to the jury's credibility judgment.
>
> We conclude that the evidence was sufficient to sustain Johnson's convictions because a rational trier of fact could conclude that Johnson committed the crimes beyond a reasonable doubt.

(ECF No. 15-12, PageID.1054-1055 (footnote omitted).)

Petitioner claims that the Court should evaluate the quality of the evidence against him. Petitioner states that the complainants in his criminal case made allegations without any substantiating evidence. Petitioner further contends that complainants were not reliable witnesses because they were drug addicts and prostitutes. However, as noted above, it is for the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Petitioner improperly asks this Court to usurp the role of the jury as the trier of fact. Giving proper deference to the trier-of-fact's verdict and to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA, the Court finds that Petitioner has failed to support his claim that his criminal sexual conduct convictions are not supported by legally sufficient evidence. Therefore, Petitioner's first claim for relief is properly denied for lack of merit.

### IV. Sufficiency of the evidence of possession with intent to deliver

In Petitioner's second claim for relief, he asserts that his conviction for possession with intent to distribute marijuana conviction is not supported by sufficient evidence. In addressing this claim on appeal, the Michigan Court of Appeals applied the *Jackson* standard, stating:

> We must resolve any conflicting evidence in the prosecution's favor. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime, including the defendant's intent. The jury may infer a defendant's intent to deliver a controlled substance "from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest."
>
> Here, Deputy Teelander testified that, while conducting surveillance on Johnson's house, he saw three people make very short visits to the home. Deputy Teelander testified that this type of activity was consistent with the sale of drugs. Deputy Wood testified that, when he searched Johnson, he discovered marijuana of varying quantities in individual packaging inside a larger bag. Deputy Wood and Detective Marougi both testified that this type of packaging was consistent with the sale of drugs. Finally, Detective Marougi testified that Johnson told him that he intended to sell the drugs and make a profit. Johnson testified that he was lying to Detective Marougi.
>
> The jury was in the best position to resolve the conflict between the witnesses' testimonies at trial. Further, circumstantial evidence—including the activity at Johnson's house, and the packaging of the marijuana—supported the inference that Johnson intended to deliver the marijuana. Viewing this evidence in the light most favorable to the prosecutor, we conclude that the evidence was sufficient to support Johnson's conviction of possession with the intent to deliver because a rational trier of fact could conclude that Johnson committed the crimes beyond a reasonable doubt.

(ECF No. 15-12, PageID.1055-56.)

Petitioner asserts that the guilty verdict on his possession with intent charge was irrational and unsupported. Although Petitioner states that the prosecution failed to present evidence showing that Petitioner had the intent to deliver because there were no witnesses to drug sales or deals, and no scales, weapons, or money were discovered, the Michigan Court of Appeals specifically found that, based on the evidence at trial, a rational trier of fact could conclude that Petitioner was guilty of possession of marijuana with intent to deliver. As noted above by the Michigan Court of Appeals, circumstantial evidence, such as the activity at Petitioner's house, and the packaging of the marijuana, supported the inference that Petitioner intended to sell the marijuana. In addition, the Michigan Court of Appeals properly noted that the jury was in the best position to resolve the conflict between the witnesses' testimonies at trial.

Because issues of credibility may not be reviewed by the habeas court under the standard set forth in *Jackson*, this Court is bound by the jury's conclusion that Petitioner intended to deliver the marijuana. *Herrera*, 506 U.S. at 401-02. The decision of the Michigan Court of Appeals in this case is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor is the decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner's second claim for habeas corpus relief is properly denied.

## V. Judicial bias

In Petitioner's third claim for relief, he claims that the trial judge was biased against him at trial and during sentencing. "Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009). The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008)); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975)). The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (citing, *inter alia*, *Withrow*, 421 U.S. at 47). "The presumption of impartiality stems not merely from the

11

judicial-bias caselaw, [] but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31." *Coley*, 706 F.3d at 751.

Petitioner's claim of judicial bias is based solely on the judge's rulings during his trial and sentencing. In his motion for relief from judgment, Petitioner supported his judicial bias claim by pointing to a letter from the trial judge's judicial assistant rejecting his motion to have counsel withdraw on the basis that he was represented by an attorney, so the motion to withdraw had to be filed by his attorney. Petitioner also pointed to another letter from the trial judge's judicial assistant rejecting a subsequent motion to withdraw as improper and because Petitioner was no longer being represented by the same attorney. Finally, Petitioner referenced the transcript of the sentencing hearing, at which the court held him in contempt for disrupting the proceedings. (ECF No. 26-2, PageID.1415-16.) The trial court was unpersuaded by Petitioner's argument and the denial of Petitioner's judicial bias claim was affirmed by the Michigan Court of Appeals and the Michigan Supreme Court.

In *Liteky v. United States*, 510 U.S. 540 (1994),[1] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim in this Court:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S., at 583, 86 S.Ct., at 1710. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events

---

[1] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

> occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

*Liteky*, 510 U.S. at 555-56. Petitioner fails to allege facts showing that the trial judge was biased against him in any constitutionally significant manner. Therefore, Petitioner's third claim for relief is properly denied.

### VI. Invalid warrant

Finally, Petitioner claims that errors in the arrest warrant deprived the state court of jurisdiction. Petitioner asserts that the fact that the warrant was not signed by the assistant prosecutor or the complaining witness and did not contain the district court judge's bar number violated his rights under the Fourth Amendment.[2] In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

---

[2] Petitioner has not fully explained how this claim, which appears to involve violations of state procedural rules, implicates the Fourth Amendment. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).

trial." *Id.* at 494-95 (footnotes omitted); *Cardwell v. Taylor*, 461 U.S. 571, 572-573 (1983). Therefore, the state prisoner must show that he was denied an opportunity for a full and fair litigation of that claim at trial and on direct review. *See Stone*, 428 U.S. at 493; *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986).

The Sixth Circuit has held that a federal habeas court must make two distinct inquiries before determining whether to address a Fourth Amendment claim. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). First, the habeas court must determine whether the state procedural mechanism presents the opportunity to raise a Fourth Amendment claim. *Id.* Second, the habeas court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id.; see also Abdul-Mateen v. Hofbauer*, 2000 WL 687653, at *3 (6th Cir. May 19, 2000) (unpublished table disposition) (noting that "this inquiry is not meant to be a case by case review of state court determinations").

Michigan provides criminal defendants with a procedure to fully and fairly present Fourth Amendment claims by means of an evidentiary hearing pursuant to *People v. Walker (On Reh'g)*, 132 N.W.2d 87 (Mich. 1965). *See People v. Snider*, 608 N.W.2d 502, 508 (Mich. Ct. App. 2000); *People v. Wiejecha*, 165 N.W.2d 642, 488 (Mich. Ct. App. 1968) (noting that *Walker* involved the admissibility into evidence of an allegedly involuntary confession). Petitioner fails to provide any reason why he would have been prevented from raising his Fourth Amendment claim in the context of a *Walker* hearing. Therefore, the Court need not address Petitioner's Fourth Amendment claim.

In addition, the Court notes that Petitioner's Fourth Amendment claim is entirely lacking in merit. As noted by the Circuit Court in Petitioner's motion for relief from judgment:

> [Petitioner] has not submitted any evidence to support his claim [of a deficient arrest warrant], nor has he shown, or even argued, that he was prejudiced by the

14

> alleged defects.  Furthermore, a review of the record shows that the arrest warrant filed with the court in this case contained all of the information required by MCR 6.102(C).  Even if the arrest warrant had been defective, an invalid arrest warrant does not deprive the court of jurisdiction.  *People v. Burrill*, 391 Mich 124, 133; 214 NW2d 823 (1974).  Accordingly, [Petitioner] has not met the "good cause" or "actual prejudice" standards with respect to this issue.  MCR 6.508(D)(3).

(ECF No. 26-2, PageID.1431-32.)  Because Petitioner's claim regarding his arrest warrant is not properly before this Court, and because it lacks any merit, this claim will be denied.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated: November 29, 2018   /s/ Gordon J. Quist
   GORDON J. QUIST
   UNITED STATES DISTRICT JUDGE